(No. 32281.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANDREW REEVES, JR., Plaintiff in Error.

*Opinion filed September 17, 1952.*

EDWARD I. ROTHSCHILD, of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (WILLIAM C. WINES, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR MANNING, and WILLIAM J. McGAH, JR., all of Chicago, of counsel,) for the People.

Mr. CHIEF JUSTICE CRAMPTON delivered the opinion of the court:

Plaintiff in error, Andrew Reeves, Jr., filed a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1951, chap. 38, par. 826) seeking review of a conviction of murder for which he received a sentence of ninety-nine

years. The People filed a motion to dismiss the petition, which was allowed, and we granted a writ of error to the criminal court of Cook County.

Plaintiff in error was indicted for murder by the grand jury on October 14, 1943. Before trial, he was found insane by the behavior clinic of the criminal court and was thereafter found insane by a jury and committed to the Illinois Security Hospital at Menard. On March 31, 1944, he was returned to the jurisdiction of the Cook County criminal court, the case was reinstated, and further examination was ordered to be made by the behavior clinic. On April 21, 1944, a petition was filed by an assistant public defender stating the defendant had "recovered from said insanity to the degree that he can now co-operate with his counsel and can enter a plea," etc. On the same day a jury was empaneled to determine whether Reeves had recovered his sanity, and the court, relying upon said stipulation, instructed the jury to return a finding of sanity.

At the conclusion of these proceedings, other counsel was appointed by the court to represent Reeves and after several continuances he was found guilty by a jury on May 31, 1944, and sentenced to ninety-nine years. The trial jury made no finding that Reeves was sane at the time of the commission of the murder. Several years later, in November, 1950, Reeves filed his petition under the Post-Conviction Hearing Act alleging substantial constitutional rights had been violated. Upon a hearing in the criminal court of Cook County pursuant to a form motion filed by the State's Attorney, the petition was dismissed on March 8, 1951. The case is here on revised petition for writ of error filed November 29, 1951, which we granted, a prior petition for writ of error having been withdrawn with leave of this court and without prejudice. Upon the granting of the writ of error we deemed it essential to appoint counsel other than the trial court appointed counsel and it was so

ordered. These facts are all substantially admitted by the record and the People.

Plaintiff in error contends due process and equal protection of the law were denied him because (a) he was tried for murder while insane and the jury never passed upon the question of his sanity at the time of the murder or upon his purported restoration, the latter having been upon the stipulation of the assistant public defender, and the court, by directing a verdict, withdrew from the jury the issue to be tried; (b) he was compelled to testify against himself at the murder trial by the introduction in evidence of a confession obtained while insane; and (c) he was not afforded competent counsel for his defense at a trial charging a capital offense. The grounds for this latter charge are that his counsel failed to confer with him at all and prepared no defense; that counsel made no objections whatsoever during the trial, either as to the admissibility of the confession, the introduction of evidence, or the statements of the State's Attorney concerning a prior conviction; and that his attorney failed to present and place before the jury at the murder trial the defense of insanity, in the face of his adjudication of insanity, which had continued to within a recent date before his trial despite the purported restoration, which he now disavows.

The People contend the issue of insanity was presented to the murder trial jury and the issues are *res adjudicata;* that the petition states mere conclusions and that, other than the sworn petition, there were no affidavits or documents attached to the petition as required by the statute, Rule 27B of this court, and our recent holding in the case of *People* v. *Jennings,* 411 Ill. 21; and that the facts alleged, if admitted to be true, do not constitute or show a substantial violation of constitutional rights. The People have filed a supplemental abstract which sets forth a petition for allowance of attorney's fees, as allowed by statute in a capital case, which indicates counsel appointed by the

trial court interviewed the defendant on eight different occasions and enumerates in some detail the preparation made for, and the work done at, the trial. This, of course, raises an issue of fact not triable by this court and would be proper only upon the hearing contemplated by the Post-Conviction Hearing Act before the trial court and should be raised by answer rather than by motion to dismiss, assuming substantial constitutional questions are raised, which, we think, is the case here.

*People* v. *Jennings,* 411 Ill. 21, disposes of most of the questions in this case. *Res adjudicata* cannot be mechanically applied to foreclose an inquiry which probes beneath the mere fact of adjudication to determine whether or not, in the process of adjudication, there has been any infringement of the constitutional rights of the petitioner. Although the record shows there were some instructions on the defense of insanity presented at the murder trial, most of which were tendered by the defendant and were refused, we are unable to determine from the ruling on the motion whether petitioner's claims were presented or waived and, if raised, whether those claims were fairly decided. It is true, we held in the *Jennings case,* that the trial court should determine whether the petition is supported by accompanying affidavits and if not, whether the absence of such affidavits is sufficiently explained and excused by petitioner's own sworn statements. It is also the fact that the record presented is meager, to say the least, but we think the absence of accompanying affidavits may readily be sufficiently and adequately explained and excused where defects and violations of constitutional rights are raised by fair inference from the sworn statements of a petitioner and where they are substantially borne out by matters appearing on the face of the record. The requirement for such accompanying affidavits is necessitated by the need to furnish information *dehors* the available record or to require at the hearing an adequate search of those parts of

the record not then in the hands of or available to the petitioner. We should not construe the statute and our own rules so strictly that a fair hearing be denied and the purposes of the act defeated. However, we do not intend hereby to lessen the duty of petitioners under the act to make a substantial showing of a violation of constitutional rights, for the allegation of a mere conclusion to that effect under oath will not suffice. Assuming for the moment that constitutional questions are substantial and properly raised, we hold the showing made here by petitioner, and as supported by the record itself, is sufficient to invoke the act.

The one serious and real issue in the case at bar is whether, under all the facts and circumstances shown, the defendant was competently and adequately represented at the trial of a capital offense which carried with it a possible sentence of death, although the extreme penalty was not imposed. We are not constrained to hold at this writing that under all the peculiar happenings here the defendant was denied due process at the jury hearing concerning the question of the restoration of his sanity. We do not now say the court cannot direct a verdict in a sanity hearing, which is a civil case, upon a proper state of the evidence and the record. Nevertheless, the statute (Ill. Rev. Stat. 1951, chap. 38, pars. 592-593,) provides for jury trials in sanity hearings to determine the sanity of defendants at the time of and before trial, and after conviction and for the restoration of reason. If a defendant is insane and unable to answer for himself, he certainly is in no position to authorize his counsel to stipulate, nor is counsel warranted in stipulating, to his restoration, which is the very issue the jury is sworn to try. Nor is the court warranted, on the basis of such a plea and without a full hearing, in instructing the jury as to the ultimate verdict on the ground of such stipulation, plea or assertion standing alone and without evidence to support such action. In so holding we are not unmindful of the condition which may be created

by prisoners who, adjudged insane and finding the confinement resulting therefrom not to their liking, may exert every effort to effect a restoration and take their chances on the trial of the case with the view in mind of later raising, as here, the sufficiency of the restoration proceedings. Such a plan of action, if conceived in the mind of the prisoner, would tend to refute the accuracy of the original adjudication of insanity. Albeit, in order to avoid the repetition of situations similar to the case at bar the courts should exercise care to see that restoration proceedings be determined as directed by statute; that the issue submitted as one of fact be determined by the jury; and that directed verdicts be sparingly used only where the evidence properly warrants that action. They should not exercise the prerogative of directing a verdict solely upon the unsupported stipulation, agreement, or plea, alone, made by the accused or by his counsel.

The protection thrown around an accused person, that he must be of sound mind at the time of the perpetration of an offense, or before trial or conviction, and the entry of judgment, is as old as our concept of liberty. In *People v. Maynard*, 347 Ill. 422, we said "the rule at common law was that an insane person could not be required to plead or be placed on trial for the crime charged during such disability, the reason being that by an act of God he is disabled to make his defense, and since there may be circumstances within his knowledge which would prove him innocent but which because of his mental condition he could not make use of as a defense, he should not be tried during his insanity. Writers on criminal jurisprudence concur in the view that no person in the state of insanity should be put upon his trial for an alleged crime or be made to suffer the judgment of the law." This historic heritage relates back to Chitty, Blackstone, Hale and Coke. The general rule is that a jury trial in an insanity proceeding is not essential to due process, (*Montana Co.* v. *St. Louis Mining*

& Milling Co. 152 U.S. 160, 38 L. ed. 398; In re Moyni-han, 332 Mo. 1022, 62 S.W. 2d 410, 91 A.L.R. 74; 28 Am. Jur., Insane and Other Incompetent Persons, sec. 17,) although it has been held that due process of law requires that the fact of sanity be tested before a jury. (43 Am. St. Rep. 539; 13 Ann. Cas. 878.) If a jury is not necessary to due process in establishing the fact of insanity, one certainly is not required for the restoration of reason. Yet under the statutes, as enacted by our legislature, a jury trial has been decreed for either and both proceedings. We are constrained to believe that an arbitrary direction of a verdict on the part of a trial judge in insanity or restoration proceedings may constitute an abuse of discretion, but we find it unnecessary to decide that issue here for the reason that our only concern at the present stage of these proceedings is whether the petition is sufficient to properly raise the question of a substantial denial of constitutional rights, thus invoking the act and calling for an answer from the State's Attorney and a hearing thereon by the court.

Reduced to the final analysis, this case presents the single but troublesome question of whether the defendant was denied due process owing to the nature of the representation he received in the trial court. On the subject of the competency of counsel much could be said, but it is clear that the mere allegation of incompetency is not sufficient to invoke the act. Insanity is a defense to be asserted at the trial as any other defense and the responsibility of raising it rests upon counsel. The failure to make the defense may constitute a waiver but such failure does not necessarily establish incompetency of counsel. In *United States* v. *Ragen*, 166 Fed. 2d 976, Justice Minton succinctly stated the proposition on the competency of counsel thus: "Whenever the court in good faith appoints or accepts the appearance of a member of the bar in good standing to represent a defendant, the presumption is that such counsel is competent. Otherwise, he would not be in good standing at

the bar and accepted by the court. The constitutional requirements have been met as to the necessity for counsel. If the action of counsel in the presence of the court in the conduct of the trial reduces the trial to a travesty on justice, such conduct might be considered on the proposition that such a trial was a denial of due process. The conduct of counsel in the trial of a case is that of only one of the officers of the court whose duty it is to see that the defendant receives a fair trial. He is only one of the actors in the drama. The best of counsel makes mistakes. His mistakes, although indicative of lack of skill or even incompetency, will not vitiate the trial unless on the whole the representation is of such low caliber as to amount to no representation and to reduce the trial to a farce. * * * Petitions challenging the competency of counsel, especially years after the conviction, must clearly allege such a factual situation which if established by competent evidence would show the representation of counsel was such as to reduce the trial to a farce or a sham. Otherwise, they should be dismissed."

We are not able to determine the truth or falsity of the petitioner's allegations. A full hearing, as contemplated, may resolve the issues adversely to plaintiff in error but we think, on the strength of the facts alleged and which are undisputed on the record, namely: that the behavior clinic found the accused to be insane shortly after the indictment was returned; that a jury in regular form subsequently found the accused insane, raising a presumption the insanity continued until properly restored; a purported restoration proceeding, irregular in some degree to say the least; the subsequent trial with the elements involved of neglect to present to the murder jury the previous adjudication of insanity, the failure to object at any stage of the proceeding to the introduction in evidence of a confession obtained, ostensibly, from a defendant who was shortly thereafter duly adjudged insane, and the statements by the

State's Attorney in the course of the trial concerning a previous conviction, without objection; that all these facts, coupled with the petitioner's sworn claim that he never conferred with his counsel until the day of the trial, (which, of course, may or may not be true and which is definitely denied by the People,) certainly present the very vital question of inadequacy of representation, which may, if proved, reduce the trial as conducted to a farce and a sham. If this is the situation in this case, as alleged, it was indeed a travesty on justice and a denial of due process. The allegations present the question which, if resolved in favor of the accused upon a proper record being presented to this court, would result in a reversal of the case on ordinary writ of error, or, if filed in apt time, upon a petition for a writ of error in the nature of a *coram nobis,* assuming the facts here shown and withheld from the jury, if they were so withheld, were not brought to the attention of the trial judge, for under the proof of insanity adjudication and the facts surrounding the restoration proceedings, the trial judge, in full possession of such a factual situation, would not have caused the judgment to be entered.

We hold the sworn petition and the record facts here established raise substantial constitutional questions and are claims which could not have been waived by this petitioner if he were, in fact, insane. These questions or those of his restoration, the adequacy of his defense and the competency of his representation are still open to adjudication under the Post-Conviction Hearing Act.

The criminal court improperly sustained the motion to dismiss and the judgment of said court is reversed and the cause remanded with directions to overrule the motion and, upon answer being filed, to proceed to hearing upon the issues thus presented.

*Reversed and remanded, with directions.*