(Nos. 58673, 58816.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ALONZO LEWIS, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JESSIE J. McKINLEY, Appellee.

*Opinion filed June 29, 1984.—Rehearing denied September 28, 1984.*

SIMON, J., dissenting.

Appeals from the Appellate Court for the First District; heard in that court on appeals from the Circuit Court of Cook County, the Hons. Earl E. Strayhorn, Frank W. Barboro, and Joseph J. Urso, Judges, presiding.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael B. Weinstein, Assistant Attorney General, of Chicago, and Michael E. Shabat, Joan S. Cherry, Lawrence R. Stasica, and Thomas Gearen, Assistant State's Attorneys, of counsel), for the People.

Steven Clark, Deputy Defender, and Richard F. Faust, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago (James R. Vogler and Douglass G. Hewitt, of Winston & Strawn, of counsel), for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Presented in these consolidated causes is the question whether, following a finding that an accused is not fit to stand trial, a later finding of fitness may be based on stipulated evidence. Defendant Alonzo Lewis (Docket No. 58673) was charged by information in the circuit court of Cook County and following a jury trial was convicted of two counts of rape (Ill. Rev. Stat. 1977, ch. 38, par. 11—1), two counts of deviate sexual assault (Ill. Rev. Stat. 1977, ch. 38, par. 11—3), and one count of burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1). The appellate court reversed and remanded. (115 Ill. App. 3d 389.) Defendant Jessie J. McKinley, Jr. (Docket No. 58816), was charged by information in the circuit court of Cook County with two counts of murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(1)) and two counts of armed violence (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2). Following a jury trial, defendant was convicted of murder. The appellate court reversed and

remanded. (115 Ill. App. 3d 1095.) In each instance the appellate court held that, in finding defendant fit to stand trial solely on the basis of a stipulation, the circuit court improperly exercised its discretion. We allowed the People's petitions for leave to appeal (87 Ill. 2d R. 315(a)) and consolidated the causes for further proceedings. The facts are adequately set forth in the opinions of the appellate court and will be restated here only to the extent necessary to discuss the issues.

In his first trial, the circuit court noted that defendant Lewis (cause No. 58673) frequently slept during the proceedings. His conduct created a *bona fide* doubt as to his fitness to stand trial. The trial was suspended, a fitness hearing was held, and based upon the testimony of Dr. Eugene Stern, a psychiatrist, the court found that defendant was not fit to stand trial. A mistrial was declared. In a subsequent proceeding it was stipulated that Dr. Gilbert Bogan of the Psychiatric Institute of the circuit court of Cook County had examined defendant and if Dr. Bogan were called as a witness, he would testify that he had examined defendant and, based upon his examination, defendant was now mentally fit for trial, able to understand the nature of the charges pending against him, and able to cooperate with counsel in his own defense. The court considered these stipulations and found that defendant Lewis was fit to stand trial. Ill. Rev. Stat. 1981, ch. 38, par. 104—10 *et seq.*

In cause No. 58816 (McKinley), upon allowance of defendant's pretrial motion, the circuit court ordered the psychiatric examination of defendant as to his fitness to stand trial and his sanity at the time of the offense. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—1.) Based upon the opinions of two psychiatrists, Dr. Gilbert Bogan, and Dr. Edith D. Hartman, a staff psychiatrist at the State Psychiatric Institute, the court found McKinley unfit to stand trial and in need of medical treatment. In a restoration

hearing held approximately seven months later the parties stipulated:

"That if we were to proceed to hearing, Judge, we would prove the following facts by way of testimony by one Gilbert Bogan, a licensed physician in the State of Illinois, licensed to practice medicine, Dr. Bogan being a member of the Psychiatric Institute of the Circuit Court of Cook County, would testify that on May 31, 1979, he had occasion to examine the defendant before the Court, Jessie McKinley, and at that time making observations and after interviewing Mr. Jessie McKinley came to the opinion, and so stated it is his opinion that the defendant is mentally fit to stand trial and that he understands the nature of the charges pending against him, the purpose of the proceedings, and that he is able to cooperate with counsel in his own defense."

The court considered the stipulation and found the defendant fit to stand trial.

In reversing the judgments and remanding for new trials the appellate court, in each case, relied primarily on *People v. Greene* (1981), 102 Ill. App. 3d 639. In *Greene* the court held that a prior adjudication of unfitness raises the presumption that the defendant remains unfit and the presumption continues until there has been a valid hearing finding him fit. (102 Ill. App. 3d 639, 642.) Given this presumption, a finding of fitness may not be based on a stipulation to the existence of psychiatric conclusions. The appellate court reasoned that since there was "no affirmative showing in the record below that the trial court exercised discretion in finding Greene fit to stand trial, there was in effect no fitness hearing at all." (102 Ill. App. 3d 639, 643.) The appellate court found that there was no showing in the records here that the circuit court exercised discretion in finding defendants restored to fitness, and therefore reversed the judgments and remanded for proper fitness hearings.

The People contend that stipulated evidence was ad-

missible on the issue of fitness to stand trial. They point out that the statute governing fitness hearings enumerates the matters which, "subject to the rules of evidence," are admissible on the issue of defendant's fitness. (Ill. Rev. Stat. 1981, ch. 38, par. 104—16(b) (formerly Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—1(e)).) They argue that because under common law rules of evidence stipulated testimony is admissible, this provision demonstrates the legislative intent to make stipulations an appropriate means of presenting evidence at a fitness hearing. They argue, too, that the appellate court erroneously equated the stipulation concerning medical testimony with a stipulation that defendant was fit.

Defendants submit that the appellate court's decisions are consistent with *People v. Reeves* (1952), 412 Ill. 555, and its progeny. See, *e.g., People v. Johnson* (1973), 15 Ill. App. 3d 680.

In *People v. Reeves* (1952), 412 Ill. 555, 560-61, in reversing a finding, based on a directed verdict, that defendant had been restored to sanity, the court said:

"If a defendant is insane and unable to answer for himself, he certainly is in no position to authorize his counsel to stipulate, nor is counsel warranted in stipulating, to his restoration, which is the very issue the jury is sworn to try. Nor is the court warranted, on the basis of such a plea and without a full hearing, in instructing the jury as to the ultimate verdict on the ground of such stipulation, plea or assertion standing alone and without evidence to support such action. *** They should not exercise the prerogative of directing a verdict solely upon the unsupported stipulation, agreement, or plea, alone, made by the accused or by his counsel."

We find the stipulations in *Reeves* and *Greene* and those entered into here clearly distinguishable. In *Reeves* the parties stipulated to the conclusion that the defendant had "recovered from said insanity to the degree that he can now co-operate with his counsel and can enter a

plea." (412 Ill. 555, 557.) In *Greene* defense counsel stipulated to "the findings of the two psychiatrists as contained in the reports and *** to the fact that the defendant is fit for trial." (102 Ill. App. 3d 639, 641.) Here, however, it was stipulated that, if called to testify, qualified psychiatrists who had examined defendants would testify that in their opinions the defendant was mentally fit to stand trial.

The stipulations were not to the fact of fitness, but to the opinion testimony which would have been given by the psychiatrists. Upon considering these stipulations and personally observing defendants, the circuit court could find defendants fit, seek more information, or find the evidence insufficient to support a finding of restoration to fitness. The circuit court recognized that, as stated in *People v. Bilyew* (1978), 73 Ill. 2d 294, 302, "[t]he ultimate issue was for the trial court, not the experts, to decide." We find, therefore, that the circuit courts did not err in considering the stipulations regarding the psychiatrists' opinions as to defendants' fitness. We note parenthetically that neither at trial nor on appeal has the contention been made that there was a *bona fide* doubt as to defendants' fitness—the attacks are based solely on the allegedly improper stipulations.

The parties have briefed and argued several issues which, in view of the conclusion reached on the issue of fitness, must be considered. In cause No. 58816, defendant McKinley contends that the prosecution's systematic use of peremptory challenges to exclude blacks from the jury deprived him of his right to an impartial jury in violation of both the sixth amendment to the United States Constitution and article I, section 8, of the Illinois Constitution. The appellate court, relying on this court's decision in *People v. Williams* (1983), 97 Ill. 2d 252, rejected this argument. *Williams,* which reviewed the authorities bearing on the issue, has recently been reaf-

firmed in *People v. Payne* (1983), 99 Ill. 2d 135, and is dispositive of the issue.

In cause No. 58673, defendant Lewis contends that he was not proved guilty beyond a reasonable doubt of the rape and deviate-sexual-assault charges: first, because an entry through the bathroom window was physically impossible and there was no physical evidence corroborating that theory; second, there was a "paucity of evidence" corroborating the testimony of the two alleged victims; and, third, his identification by the victims was vague and uncertain.

Courts of review are charged with a special duty to carefully examine the evidence in rape cases. (*People v. Hubbard* (1967), 38 Ill. 2d 104, 111.) However, a verdict will not be set aside unless it is so palpably contrary to the evidence or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused. (*People v. Sumner* (1969), 43 Ill. 2d 228, 232.) The appellate court reviewed the evidence and rejected each of defendant's contentions. We agree with the appellate court that:

> "Having conceded that consent was not an issue in this matter, the manner of entry into the apartment is irrelevant, as is the failure of the women to return to the hospital for further treatment. Regarding the absence of evidence of chicken bones, we point out that unless an investigating officer were alerted to look for chicken bones at the scene of an alleged rape, he would be most unlikely to note their presence or to preserve them as evidence. Thus, this is not, in our opinion, probative of the credibility of the complaining witnesses.
>
> Finally, defendant asserts that the failure of the State to find his fingerprints in the apartment creates a reasonable doubt as to his guilt. This would merely be corroboration. As we noted earlier, the clear and convincing testimony of the two women is enough to sustain his conviction. Only when an identification is vague and un-

certain is additional corroboration necessary. *People v. Morrow* (1971), 132 Ill. App. 3d 293, 170 N.E.2d 487." (115 Ill. App. 3d 389, 399.)

Defendant's contention that he was not proved guilty beyond a reasonable doubt is without merit.

Defendant Lewis' final contention is that the circuit court committed reversible error in admitting into evidence a 1977 police "mug shot" of defendant. The testimony shows that a witness, after being shown this and several other photographs, identified defendant as the man who, two months after the occurrence involved in this case, had raped her. Defendant contends that, because the alleged rape occurred in 1978, this photograph prejudiced the jury, making them aware of defendant's prior misconduct. The People argue that where a victim testified concerning the rape and deviate sexual assault committed by defendant subsequent to the instant crimes, for the purpose of showing identity, intent, and *modus operandi,* the court correctly admitted into evidence the photograph by means of which the victim originally identified defendant.

The appellate court, citing *People v. Warmack* (1980), 83 Ill. 2d 112, held that the admission into evidence of defendant's mug shot bearing an arrest date prior to that of the offense in question was error. It held, however, that in view of the substantial evidence of guilt, the error was harmless. We agree. Further, we find apposite the following comment:

"In this regard, we especially note that defendant's allegation of prejudice is somewhat speculative. To hold that this error is reversible would require us to presume that the jury recognized the arrest date for what it was, realized that the arrest date preceded the date of the offenses with which defendant was charged, and then adjudicated defendant's guilt on the basis of this prior arrest rather than the evidence produced at trial. We do not believe that justice requires that this course be

taken." 83 Ill. 2d 112, 129.

For the reasons stated, the judgments of the appellate court are reversed, and the judgments of the circuit court are affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE SIMON, dissenting:

The majority opinion dramatically changes the law in Illinois governing the defendant's rights at a restoration hearing and, therefore, I dissent. In these two cases, this court approves the use of stipulated expert testimony to deprive a defendant who has previously been adjudicated incompetent to stand trial of his statutorily guaranteed right to a fitness hearing (Ill. Rev. Stat. 1981, ch. 38, par. 104—16). The majority perceives a "clear" distinction between a stipulation that the defendant is now fit to stand trial (as was presented in *People v. Reeves* (1952), 412 Ill. 555) and a stipulation that a mental health expert, if called as a witness, would testify that the defendant is now fit to stand trial (the situation presented in this case). The distinction is meaningless, however, under the facts presented here.

This court last ruled on this issue in 1952. The majority quotes the operative principle as set forth in *Reeves,* but then attempts to distinguish it away. (103 Ill. 2d at 115-16.) The quotation makes clear the concern that a defendant who is unfit to stand trial is incapable of making reasoned judgments, cooperating with counsel and guiding his own defense. This concern forms the linchpin of the current fitness statute: "A defendant is unfit if, because of his mental or physical condition, he is *unable to understand* the nature and purpose of the proceedings against him or *to assist in his defense.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 104—10.) The *Reeves* court understood that as long as there was some

possibility that a defendant was still unfit it was a contradiction in terms to allow him to stipulate to his own mental condition or to instruct his attorney to do so. The question is one of constitutional dimension since the defendant who is tried while unfit has been denied due process of law. (*People v. McKinstray* (1964), 30 Ill. 2d 611, 615; *People v. Bender* (1960), 20 Ill. 2d 45, 47-48; *People v. Reeves* (1952), 412 Ill. 555, 561.) *Reeves* further makes clear that the trial judge cannot direct a verdict on the basis of a stipulation alone. Doing so restricts the scope of the restoration hearing by excluding all evidence other than the stipulation, and thus short-circuits the provision of a full hearing.

In this case no evidence other than the stipulation was presented to the court. Whatever the wording, under the circumstances, the stipulation determined the outcome of the hearing. I cannot agree with the majority's suggestion to the contrary (103 Ill. 2d at 116). On a record which consists solely of a stipulation such as is presented here, there can be no conclusion other than that the defendant is fit to stand trial. Any other finding would be contrary to the manifest weight of the evidence and therefore an abuse of discretion by the trial judge. Since the procedure followed here had the same effect as directing a verdict on the basis of the stipulation alone, it violates the prohibition of *Reeves*.

The majority further suggests that the trial judge "could" seek more information regarding fitness in these cases. (103 Ill. 2d at 116.) While the possibility remains open that the trial court "could" do this, I suggest that it is highly unrealistic to expect that the trial judge would, since this opinion holds that it is not necessary for the trial court to consider any evidence in addition to the stipulated psychiatric testimony. By stipulating to the expert's testimony, two lawyers and a physician are expressing their professional opinions that the defendant is

competent to stand trial. Why would a trial judge seek additional testimony if the defendant's own counsel acts as though it would be futile to do so? If it is assumed that this defendant, like all others, acts through his attorney and is bound by his attorney's strategic decisions, there is no reason for the trial judge to take matters into his own hands.

With this opinion this court relies on a semantic technicality to emasculate the long-standing Illinois principle that defendants who have once been adjudicated incompetent require the special protection of the courts and cannot stipulate that protection away by their own actions or the actions of their attorneys. In *People v. McKinstray* (1964), 30 Ill. 2d 611, this court reversed the defendant's conviction of reckless homicide obtained after the defendant testified that he understood the nature of the charge against him and was willing to try to cooperate with counsel although a psychiatrist testified that he was not able to. "To accept defendant's opinion that he is able to co-operate with counsel in his defense, when the purpose of the hearing is to determine that very fact, would make a sham out of the sanity hearing." (30 Ill. 2d 611, 616-17.) To allow defendant, through his counsel, to stipulate to unsworn expert testimony has the same effect.

In cause No. 58816, I also dissent on the ground that the prosecution's systematic exclusion of blacks from the jury deprived the defendant of his right to a jury drawn from a fair cross-section of the community. For the reasons explained in my dissent in *People v. Payne* (1983), 99 Ill. 2d 135, 140 (Simon, J., dissenting), I believe that the defendant's rights under the sixth and fourteenth amendments to the United States Constitution and article I, sections 2 and 13, of the Illinois Constitution have been violated.

Justice Marshall's recent dissent to the denial of *cer-*

*tiorari* in three Illinois cases (*Williams v. Illinois, Dixon v. Illinois, Yates v. Illinois* (1984), 466 U.S. ___, ___, 80 L. Ed. 2d 836, 836, 104 S. Ct. 2364, 2364 (Marshall, J., dissenting, joined by Brennan, J., on denial of *certiorari*)) should provide the incentive for us to reexamine a disturbing problem which will not resolve itself of its own accord. Justice Marshall's eloquent analysis of the problem includes statistics which show without doubt that blacks are grossly underrepresented on the jury panels of black defendants accused of capital offenses in Illinois. Similar underrepresentation occurs in noncapital cases such as this one.

This court has now rejected black defendants' claims that the systematic exclusion of black persons from juries resulted in the denial of equal protection and of their right to a trial by a jury of their peers at least six times within one year. (*People v. Payne* (1983), 99 Ill. 2d 135; *People v. Yates* (1983), 98 Ill. 2d 502; *People v. Cobb* (1983), 97 Ill. 2d 465; *People v. Williams* (1983), 97 Ill. 2d 252; *People v. Davis* (1983), 95 Ill. 2d 1; *People v. Gosberry* (1983), 93 Ill. 2d 544.) The facts in those cases alone are enough to establish the systematic exclusion of a particular group in case after case which this court requires under *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, in order to find a violation of the equal protection clause of the fourteenth amendment. In addition the sixth amendment, as applied to the State of Illinois through the fourteenth amendment, prohibits the exclusion of jurors solely on the basis of race. There can no longer be any doubt that the practice of excluding jurors on the basis of race is pervasive in Illinois and that it raises constitutional issues of the gravest dimension under two separate guarantees. Because I believe that this court has wrongly decided these constitutional issues, once again I dissent. See *People v. Payne* (1983), 99 Ill. 2d 135, 140 (Simon, J., dissenting); *People*

*v. Yates* (1983), 98 Ill. 2d 502, 540 (Simon, J., concurring in part and dissenting in part); *People v. Davis* (1983), 95 Ill. 2d 1, 54 (Simon, J., dissenting); *People v. Gosberry* (1983), 93 Ill. 2d 544, 549 (Simon, J., dissenting).