UNITED STATES of America ex rel.
Alonzo LEWIS, Petitioner-Appellant,

v.

Michael P. LANE, Director, Illinois Department of Corrections, and Linda Ann Giesen, Warden, Dixon Correctional Center, Respondents-Appellees.

No. 86–2824.

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 1987.

Decided June 17, 1987.

Rehearing Denied Aug. 10, 1987.

Richard F. Faust, State Appellate Defender, Chicago, Ill., for petitioner-appellant.

Terence M. Madsen, Office of Ill. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Petitioner, Alonzo Lewis, was convicted in state court in Illinois on two counts of rape, two counts of deviate sexual assault, and one count of burglary. The Illinois Appellate Court reversed and remanded, but the Illinois Supreme Court reversed the Appellate Court and reinstated the convictions. *People v. Lewis*, 115 Ill.App.3d 389, 71 Ill.Dec. 198, 450 N.E.2d 886 (1983), *rev'd*, 103 Ill.2d 111, 82 Ill.Dec. 442, 468 N.E.2d 1222 (1984), *certiorari denied*, 470 U.S. 1006, 105 S.Ct. 1364, 84 L.Ed.2d 403. Lewis subsequently sought habeas corpus relief in federal court. The district court denied relief and Lewis appeals. For the reasons below we affirm.

The facts of the underlying crimes are not relevant to this appeal. It will suffice to state that Lewis' convictions concern an attack upon two sisters who lived together in an apartment in Chicago, Illinois. The attack occurred during the early morning hours of July 12, 1978. Lewis was originally brought to trial before Cook County Circuit Court Judge Gino Di Vito on November 5, 1979. As the trial progressed Judge Di Vito noticed that Lewis' behavior was extremely passive and that he frequently slept through the proceedings. According to his counsel, Lewis was also claiming to have conversations with beings from outer space. This created a *bona fide* doubt as to Lewis' fitness to stand trial and the trial was suspended in order to conduct a mental fitness hearing. The court found Lewis to be unfit and declared a mistrial on November 9, 1979. Lewis was transferred to an Illinois Department of Mental Health facility located in Chester, Illinois. On December 18, 1979 the court again found that Lewis was unfit to stand trial. On June 19, 1980 a restoration hearing was held before Judge Earl E. Strayhorn. Both Lewis' counsel and the prosecution stipulated that two psychiatrists had examined Lewis in February and March of 1980 and that they would testify that Lewis was now fit to stand trial in that he could understand the nature of the charges against him and he was able to cooperate with his counsel in his own defense. Lewis was present for the hearing but did not speak. Judge Strayhorn found that Lewis was now fit to stand trial since he could understand the charges and cooperate with his defense attorney. Lewis apparently was transferred from Chester to the Cook County Jail on June 19. On June 30 and July 1, after having met with Lewis on June 28, defense counsel moved to have Lewis provided with an anti-psychotic medication while being held for trial. Defense counsel, who had also represented Lewis at his first trial, explained that the problem at the first trial had developed because Lewis was not receiving his medication, stelazine, and that since his transfer from Chester he was again not receiving it. Judge Strayhorn ordered an evaluation by a psychiatrist. The psychiatrist examined Lewis on July 3, 1980 and determined Lewis needed stelazine. On July 8 the court ordered that the medication be provided. Jury selection in Lewis' trial began two days later and the jury subsequently found Lewis guilty. Lewis did not testify at his trial and there is no indication in the record that he exhibited the same peculiar behavior as at the first trial. Judge Strayhorn presided over the trial.

In this appeal Lewis argues that the hearing to determine his restoration to mental fitness was inadequate. He initially argues that there was an impermissible stipulation to the ultimate conclusion that

he was mentally fit. We recognize that defense counsel asked for such a stipulation, but the request was left hanging rather than accepted by the court or prosecution. Judge Strayhorn permitted stipulations as to the testimony of the two psychiatrists and reserved for himself a determination of fitness. As the Illinois Supreme Court found, "The stipulations were not to the fact of fitness, but to the opinion testimony which would have been given by the psychiatrists. Upon considering these stipulations and personally observing defendants, the circuit court could find defendants fit, seek more information, or find the evidence insufficient to support a finding of restoration to fitness." *Lewis*, 103 Ill.2d at 116, 82 Ill.Dec. at 445, 468 N.E.2d at 1225. The court then concluded that Judge Strayhorn, not the experts, decided the ultimate issue of fitness for trial. *Id.* We must defer to such a factual determination of the record. 28 U.S.C. § 2254(d); *United States ex rel. Kosik v. Napoli*, 814 F.2d 1151, 1153 & n. 2 (7th Cir.1987). Petitioner alternatively argues that the restoration hearing was inadequate because the stipulated opinion testimony was conclusory and Judge Strayhorn never heard Lewis testify at either the restoration hearing or the trial. Thus, petitioner argues, there was an inadequate basis for Judge Strayhorn's determination that Lewis was competent to stand trial. In denying the federal habeas petition, the district court held that the stipulations were sufficient to remove any *bona fide* doubt as to Lewis' mental fitness and therefore no further hearing was required. We can affirm on that ground as supported by the record and preserved by the appellee. *Phillips v. Lane*, 787 F.2d 208, 214–15 (7th Cir.1986), *certiorari denied*, —— U.S. ——, 107 S.Ct. 249, 93 L.Ed.2d 173. Our affirmance reflects that there was no *"bona fide* doubt as to defendant['s] fitness," *Lewis*, 103 Ill.2d at 116, 82 Ill.Dec. 445, 468 N.E.2d at 1225, so that the state Supreme Court could readily find the hearing procedures adequate.

■ It is clear that Lewis has exhausted his state court remedies. Respondents argue, however, that Lewis waived the opportunity to raise the issue now before us because, at the time of the restoration hearing, he did not object to the procedures employed. *See generally Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594. In a case decided prior to *Sykes*, the Supreme Court stated that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815. Cases subsequent to *Sykes* have relied on *Robinson* in holding that a *Sykes* waiver does not apply to the type of habeas claim now before us. See, *e.g., Adams v. Wainwright*, 764 F.2d 1356, 1359 (11th Cir.1985), *certiorari denied*, 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805; *Silverstein v. Henderson*, 706 F.2d 361, 367 (2d Cir.1983), *certiorari denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171. The quoted language from *Robinson*, however, is *dictum* and, moreover, it refers to knowing waiver which *Sykes* does not require. *Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506. Though perhaps not controlling, the language from *Robinson* is instructive.[1] A court should proceed cautiously in finding that a possibly incompetent person waived his opportunity to object to the procedures employed in determining his competency. On the other hand, criminal defendants will ordinarily have been represented by counsel at the time they waived any objection to competency hearing procedures, so that the better rule may be the standard rule of

---

1. In *Phillips* we held only that a *Sykes* waiver applied to a failure to object to a jury instruction on the burden of proof to be employed by a jury in determining competency. *Phillips*, 787 F.2d at 213–14. But we reserved any decision on the applicability of *Sykes* to the present type of case. 787 F.2d at 215 (distinguishing *Silverstein*). Since Phillips failed to argue in that case that his incompetency constituted cause, we did not determine if incompetency could qualify as cause. *Phillips*, 787 F.2d at 214. *Compare Bruce v. Estelle*, 483 F.2d 1031, 1037 (5th Cir.1973) (if habeas petitioner can present sufficient objective evidence of incompetency so as to be otherwise entitled to a hearing on his competency, the issue will not be considered waived), *certiorari denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770.

requiring a showing of ineffective assistance of counsel or other "cause" to overcome waiver problems. See *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397; *United States ex rel. Barnard v. Lane,* 819 F.2d 798, 800–01 (7th Cir.1987); *United States ex rel. Weismiller v. Lane,* 815 F.2d 1106, 1109 (7th Cir.1987); *Phillips,* 787 F.2d at 217. The present case does not require that we determine the extent to which the *Sykes* standard applies. Both the Illinois Appellate Court and the Illinois Supreme Court fully considered the competency issue now before us without any indication that the lack of a contemporaneous objection by Lewis constituted a procedural default. Therefore Lewis did not waive the issue for federal habeas review. *Weismiller,* 815 F.2d at 1109; *United States ex rel. Link v. Lane,* 811 F.2d 1166, 1170 (7th Cir.1987).

■ Respondents also argue that Lewis has never alleged or argued that he was actually incompetent at the time of his second trial and therefore his claim is either inadequate on the merits or any such error is harmless. The incompetency of a defendant during a trial can never be harmless error, no matter how obvious his guilt. *United States ex rel. Bilyew v. Franzen,* 686 F.2d 1238, 1245 (7th Cir.1982); *United States ex rel. SEC v. Billingsley,* 766 F.2d 1015, 1022 n. 11 (7th Cir.1985). However, improper procedures for a competency hearing can be deemed harmless error if there is no reasonable possibility that proper procedures would have produced a finding of incompetency. *Bilyew,* 686 F.2d at 1245–46; *Billingsley,* 766 F.2d at 1022. See also *Sturgis v. Goldsmith,* 796 F.2d 1103, 1109 (9th Cir.1986). Since Lewis, who has always been represented by counsel in both state and federal court, has never expressly claimed he was actually incompetent at the time of his second trial, any inadequacy with his restoration hearing can be viewed as harmless error. But since Lewis has consistently argued that the state court should have had a *bona fide* doubt as to his competency and that his competency cannot now be retrospectively determined, there seems to be an implicit allegation that Lewis actually was incompetent or at least that he possibly was incompetent.

■ Questions regarding a defendant's incompetency should normally be raised at the time of his trial. *Bruce v. Estelle,* 483 F.2d 1031, 1037 (5th Cir.1973), *certiorari denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770. We also recognize that retrospective determinations of competency as of the time a trial took place are difficult, though not impossible, to make. See *Bilyew,* 686 F.2d at 1247. Additionally we recognize the fundamental nature of the prohibition against trials of incompetents. *Id.* at 1245 (quoting *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103). With these concerns in mind we adopt the Fifth Circuit's standard for evaluating habeas claims concerning inadequate procedures in determining a defendant's competency. Under that standard the habeas petitioner must first present substantial facts to support allegations that he was not competent to stand trial. *Bruce,* 483 F.2d at 1037 (quoting *Lee v. Alabama,* 386 F.2d 97, 105 (5th Cir.1967) (en banc), *certiorari denied,* 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246). Substantial facts are facts "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during a criminal trial." *Bruce,* 483 F.2d at 1043. Accord *Wheat v. Thigpen,* 793 F.2d 621, 629 (5th Cir.1986), *certiorari denied,* — U.S. —, 107 S.Ct. 1566, 94 L.Ed.2d 759; *Adams v. Wainwright,* 764 F.2d 1356, 1360 (11th Cir.1985), *certiorari denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805. If such a showing is made, as well as a showing that inadequate procedures were provided in the state court, the habeas petitioner has satisfied his burden and the federal district court must then consider if it can make a meaningful, retrospective determination of the habeas petitioner's competency at the time of his state trial. At that point the burden of persuasion has been shifted to the state and the state conviction must be set aside

unless it can be determined that the petitioner was competent at the time of his state trial. *Bruce*, 483 F.2d at 1037–38. Accord *Bilyew*, 686 F.2d at 1247 & n. 3.

■ In the present case petitioner has failed to provide substantial facts "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt" as to his mental fitness to stand trial. Although the fact that he had previously been found incompetent initially raises some doubt as to his competency at his subsequent trial, such doubts have been overcome by other factors in the case. The record shows that the ailment causing Lewis' mental unfitness could be and was corrected by an anti-psychotic medication. Although this medication was not provided at the first trial, it was provided to Lewis during the second trial. Indeed the medication was provided until his transfer from the state mental health facility at Chester to Chicago for trial and was again provided at least two days before the trial. There is no indication that the gap in receiving stelazine hampered preparation for the trial nor that two days of renewed medication were inadequate to make him fit by the time the trial began.[2] Additionally the judge, defense counsel, and prosecutor were all aware of Lewis' need for medication as well as his previous behavior exhibiting incompetency. None of them noticed any indication of incompetency during the second trial. In fact defense counsel told the sentencing court that before the second trial, counsel, Lewis, and Lewis' mother extensively discussed the possibility of accepting a plea bargain. Counsel never asserted Lewis' incompetency despite this and other conversations with Lewis. Compare *United States v. Rodriguez*, 799 F.2d 649, 655 (11th Cir.1986); *Adams*, 764 F.2d at 1360. Since petitioner has not met his burden of presenting substantial facts raising adequate doubts as to his competency at the time of his second state trial, it is unnecessary to consider further whether the restoration hearing provided to him was adequate. Moreover, the burden never shifted to the state to show retrospectively that Lewis was competent at the time of his trial.

The judgment of the district court is AFFIRMED.

---

**2.** Defense counsel advised Judge Strayhorn that when on stelazine, Lewis is "alert, bright, healthy." (R. 448).