2022 IL App (1st) 210949-U

No. 1-21-0949

Order filed September 12, 2022.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 11354 |
| | ) | |
| CHERISE MORRIS, | ) | The Honorable |
| | ) | Carl B. Boyd, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE LAVIN delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court committed plain error by failing to exercise its discretion when it accepted a stipulated finding that defendant was fit to stand trial. The cause is remanded for a retrospective fitness hearing.

¶ 2    Following a 2019 jury trial, defendant Cherise Morris was found guilty of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (3)(B-5) (West 2014)).[1] The trial court imposed a sentence of two years of probation. On appeal, defendant contends that the trial court committed reversible plain error by failing to exercise discretion when it accepted a stipulated finding that she was fit to stand trial. For the reasons that follow, we reverse and remand for a retrospective fitness hearing.

¶ 3    Defendant's conviction arose from the events of May 13, 2015. Following arrest, she was charged by indictment with two counts of AUUW. Prior to trial, the State nol-prossed one of the counts. The case proceeded on the count alleging that on the day in question, she knowingly carried in a vehicle an uncased, unloaded firearm with immediately accessible ammunition, and that she had not been issued a currently valid license under the Firearm Concealed Carry Act (430 ILCS 66/1 *et seq.* (West 2014)). Because defendant does not challenge the sufficiency of the evidence to sustain her conviction, we recount the facts here to the extent necessary to resolve the issue raised on appeal.

¶ 4    After a jury was selected on July 16, 2018, defendant told the trial court, "I'm on pain management. I'm on pain management. I'm on a doctor's care on the pain management. I'm on heavy meds. I'm on heavy meds." In response, the court indicated that the defense team should speak with defendant and continued the case.

---

[1]The jury also found defendant guilty of one count of misdemeanor aggravated assault (720 ILCS 5/12-2(a) (West 2014)). The charge was based on the same incident underlying defendant's AUUW conviction, but was charged separately in a misdemeanor complaint. Prior to trial, the trial court granted the State's motion for joinder over defendant's objection. It does not appear from the record that the trial court imposed a sentence on the guilty finding for aggravated assault, and defendant did not list the offense or include the trial court number for the misdemeanor charge, No. 15 MC 6003347, in her notice of appeal.

¶ 5 Two days later, defense counsel reported that after speaking with defendant and a supervisor, the defense had determined defendant should be given a behavioral clinical examination (BCX). Counsel explained that "there were some things that were a little bit odd before—before this week; but at this point, it's just really deteriorated to the point where I don't think she would be effective in assisting us in her defense." The court asked counsel whether there was a *bona fide* doubt as to defendant's fitness to stand trial, and counsel said there was. The court concluded that given counsel's representation, the need for a BCX was "unavoidable at this time." The court dismissed the jury and continued the matter for completion of a BCX.

¶ 6 When the case was called on September 17, 2018, the trial court stated the matter had been set for a fitness hearing. The State stated it would be "a stipulated fitness hearing," and defense counsel indicated the defense was ready to proceed. The State then read the following stipulation into the record:

> "Judge, it is hereby stipulated by and between the parties that an order was entered on August 17, 2018, for Cherise Morris, defendant in this case, to be evaluated by the Forensic Clinical Services of the State of Illinois for the purposes of—for the purpose of assessing her fitness to stand trial, fitness to stand trial with medications, sanity at the time of the alleged offense, and the ability to understand *Miranda*.
>
> That an evaluation was completed by Fidel Echevarria, F-i-d-e-l, E-c-h-e-v-a-r-r-i-a, M.D. Ph.D., a staff psychiatrist with the Forensic Clinical Services of the State of Illinois, Circuit Court of Cook County.
>
> For his evaluation, he reviewed a psychological history prepared by Ms. Anna, I'll spell the last name, B-a-r-t-o-s-z-e-k, an LSW of Forensic Clinical Services, dated August

6, 2018. Additionally, he reviewed reports from the Harvey Police Department related to the alleged offenses.

And in a letter dated August 20, 2018, completed by Fidel Echevarria, he found the following:

As a result of completing this clinical evaluation and review of documents and records, it is the opinion of the evaluator that to a reasonable degree of medical certainty and psychiatric certainty Cherise Morris is mentally fit to stand trial.

In her present state of mind, the Defendant verbalized understanding the charges she faces, the nature of the purpose of the court proceedings against her, the roles of various courtroom personnel, and if she chooses, she should be fully capable of assisting her counsel in her defense.

The evaluator went on to state that Ms. Morris is not presently prescribed any psychotropic medications nor are there any current indications of the need for one to be administered.

The evaluator further states that it is his opinion to a reasonable degree of medical and psychiatric certainty that Cherise Morris was legally sane at the time of the alleged offense. And then also the evaluator goes on to state that it is his opinion to a reasonable degree of medical and psychiatric certainty that Cherise Morris would have understood her *Miranda* rights at the time of her arrest. So stipulated."

¶ 7    Defense counsel echoed, "So stipulated." The trial court then stated, "The Court will reflect that this is the stipulated fitness hearing of [defendant]. The State has proved by a preponderance of the evidence that [defendant] is fit to stand trial pursuant to the findings or the report of Dr.

Fidel Echevarria. The correspondence is dated August 20, 2018." Thereafter, the court and the parties discussed scheduling the next court date.

¶ 8    At trial, the State presented evidence that on the date in question, defendant, who had never applied for or been issued a concealed carry license, pointed a handgun at her neighbor in front of their building. She then entered a car and began to drive away. A responding officer curbed the car, observed a handgun on the front seat, and recovered a magazine with nine live rounds from defendant's pants pocket. The jury found defendant guilty of AUUW.

¶ 9    Two presentence investigation (PSI) reports were prepared and filed. The first, filed on October 11, 2019, indicated, among other things, that defendant was suffering from a spinal, neck, and shoulder injury. Defendant reported that she was taking several medications and indicated that she was scheduled to see a therapist for depression, stress, and anxiety. The second PSI report, filed on August 4, 2021, reflected that defendant previously suffered from a neck injury, had been diagnosed with skin cancer and colon cancer, and was taking prescribed pain medication, anti-inflammatory medication, and muscle relaxer medication. Defendant reported meeting once with a mental health professional for an assessment, but stated that counseling was never recommended and she was never diagnosed with a mental health or behavioral disorder. Defendant denied suffering from excessive anxiety or stress and expressed that she did not feel a need to meet with a mental health professional.

¶ 10    On August 4, 2021, the trial court sentenced defendant to two years of probation. Defendant filed a timely notice of appeal that same day.

¶ 11    On appeal, defendant contends that the trial court committed reversible error by failing to exercise discretion when it accepted a stipulated finding that she was fit to stand trial. She asserts

that the only evidence presented at her fitness hearing was a "bare-bones" stipulation to an expert's conclusion that she was fit to stand trial. She argues that when the court uncritically accepted the stipulation, it failed to exercise the discretion required by due process and Illinois's statutory scheme. Instead, she asserts, the trial court's "bare-bones" conclusion effectively amounted to no fitness hearing at all. She maintains that the proper remedy in this case is a new trial, not a retrospective fitness hearing.

¶ 12    The State responds that defendant forfeited any challenge to the stipulated fitness hearing where she affirmatively agreed to proceed via stipulation and also failed to preserve the issue for appeal. The State further argues that the trial court committed no clear or obvious error where it exercised its discretion in accepting the stipulation, which contained the basis for the expert's finding as well as his conclusion, and found that the State had met its burden of proof.

¶ 13    As an initial matter, we note, and the parties agree, that defendant failed to properly preserve her claim of error for appellate review, as she did not object during the fitness hearing or raise the issue in her posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Nevertheless, alleged errors concerning fitness to stand trial involve a fundamental right, thereby making plain-error review appropriate. *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 28.

¶ 14    The due process clause of the fourteenth amendment precludes the prosecution of a defendant who is unfit to stand trial. *People v. Holt*, 2014 IL 116989, ¶ 51. A defendant is unfit to stand trial if a mental or physical condition prevents her from understanding the nature and purpose of the proceedings against her or assisting in her defense. 725 ILCS 5/104-10 (West 2018). The issue of fitness to stand trial may be raised by the trial court, the defense, or the State at any time before, during, or after trial, and the court may order a BCX of the defendant by a physician,

psychologist, or psychiatrist. *Id.* §§ 104-11(a), (b), 104-13(a). After the court has ordered a BCX and received the corresponding report, it must hold a hearing to determine the defendant's fitness. *Id.* § 104-16(a). "On the basis of the evidence before it, the court *** shall determine whether the defendant is fit to stand trial." *Id.* § 104-16(d).

¶ 15    At the fitness hearing, "the trial court may consider an expert's stipulated testimony to assess a defendant's fitness but may not rely solely on the parties' stipulation to an expert's *conclusion* that the defendant is fit." (Emphasis in original.) *Gipson*, 2015 IL App (1st) 122451, ¶ 30. "However, where the parties stipulate to what an expert would testify, rather than to the expert's conclusion, a trial court may consider this stipulated testimony in exercising its discretion." *People v. Contorno*, 322 Ill. App. 3d 177, 179 (2001). Although the court may utilize an expert's conclusion as to the defendant's fitness, the ultimate decision is that of the court, not the expert. *People v. Shaw*, 2015 IL App (4th) 140106, ¶ 26.

¶ 16    While a trial court is not required to make detailed findings regarding fitness, it should be active, rather than passive, in assessing a defendant's fitness. *Gipson*, 2015 IL App (1st) 122451, ¶ 29. Because the " 'issue is one of constitutional dimension, the record must show an affirmative exercise of judicial discretion regarding the determination of fitness.' " *Shaw*, 2015 IL App (4th) 140106, ¶ 25 (quoting *Contorno*, 322 Ill. App. 3d at 179). The court must analyze and evaluate the basis for an expert's opinion, rather than merely rely on the expert's ultimate opinion. *People v. Smith*, 2017 IL App (1st) 143728, ¶ 86. The court's finding of fitness will not be reversed absent an abuse of discretion. *Shaw*, 2015 IL App (4th) 140106, ¶ 25.

¶ 17    The distinction between stipulations that are proper and improper "is a fine one." *Gipson*, 2015 IL App (1st) 122451, ¶ 30. That distinction was drawn by our supreme court in *People v.*

*Lewis*, 103 Ill. 2d 111, 115-16 (1984); see *Gipson*, 2015 IL App (1st) 122451, ¶ 30; *People v. Thompson*, 158 Ill. App. 3d 860, 864 (1987). In *Lewis*, 103 Ill. 2d at 115-16, our supreme court held that it is proper to stipulate that psychiatrists who had examined defendants would testify that, in their opinions, the defendants were fit to stand trial, but improper to stipulate "to the conclusion" or "to 'the findings' " that the defendants were fit. Beyond the propriety of the stipulation, this court has held that where the trial court's determination of fitness is based not only on stipulations, but also on the court's review of a psychological report and its own observations of the defendant, due process is generally satisfied. *Gipson*, 2015 IL App (1st) 122451, ¶ 30 (citing *People v. Cook*, 2014 IL App (2d) 130545, ¶ 15; *People v. Esang*, 396 Ill. App. 3d 833, 839 (2009)).

¶ 18    Here, the parties stipulated that Dr. Echevarria completed an evaluation of defendant and reviewed relevant police reports and a psychological history prepared by a licensed social worker. They further stipulated that "in a letter dated August 20, 2018," Dr. Echevarria stated his opinion that defendant was mentally fit to stand trial and, "in her present state of mind," should be fully capable of assisting her counsel in her defense. In our view, this stipulation falls on the improper side of the line drawn by our supreme court in *Lewis*. The parties did not stipulate that, if called to testify, Dr. Echevarria would state his opinion on defendant's fitness. Rather, they simply stipulated to his conclusion that she was fit. See *Lewis*, 103 Ill. 2d at 115-16; *Thompson*, 158 Ill. App. 3d at 864.

¶ 19    Moreover, the trial court was passive in assessing defendant's fitness. See *Gipson*, 2015 IL App (1st) 122451, ¶ 29 ("the court should be active, not passive, in assessing a defendant's fitness"). Following the stipulation, the trial court simply stated, "The State has provided by a preponderance of the evidence that [defendant] is fit to stand trial pursuant to the findings or the

report of Dr. Fidel Echevarria. The correspondence is dated August 20, 2018." Its determination appears to have been based solely on the stipulation. It did not question defendant or the attorneys about the evaluation, and it does not appear from the record that it reviewed any report prepared by Dr. Echevarria. See *Thompson*, 158 Ill. App. 3d at 865-66. We are mindful that the court referenced "correspondence" dated August 20, 2018, in its findings and that the stipulation referenced a "letter" with that same date. There is, however, no letter or correspondence with that date in the record on appeal.

¶ 20    The record does contain, as a supplemental record, a psychiatric summary by Dr. Echevarria dated August 17, 2018.[2] However, this summary is not formatted as a "letter" or "correspondence." We decline to speculate that the stipulation and the court were referring to this six-page summary report. While it is possible that the court made its fitness determination without relying solely on the stipulation, the record fails to show that it made an independent inquiry and affirmatively exercised its judicial discretion in concluding defendant was fit to stand trial. See *Smith*, 2017 IL App (1st) 143728, ¶ 87.

¶ 21    Based on the record before us, we find that the fitness hearing failed to meet the minimal due process standards necessary to find defendant fit to stand trial. In such circumstances, " '[I]t appears that retrospective fitness hearings are now the norm.' " *Gipson*, 2015 IL App (1st) 122451, ¶ 38 (quoting *People v. Mitchell*, 189 Ill. 2d 312, 339 (2000)); see also *Smith*, 2017 IL App (1st) 143728, ¶ 81 ("the appropriate remedy would be a retrospective fitness hearing"). Accordingly,

---

[2]Finding no psychiatric report or summary included in the circuit court's files, defendant requested that this court order Forensic Clinical Services to release the report or summary prepared by Dr. Echevarria on or around August 17, 2018. We granted the motion and defendant subsequently filed the summary as a supplemental record. Nothing in the record on appeal (or defendant's motions in this court), demonstrates this summary was presented to the trial court.

we remand this matter to the trial court for a retrospective fitness hearing, at which the parties may present the testimony of Dr. Echevarria regarding the opinion he held at the time of the fitness hearing. See *Gipson*, 2015 IL App (1st) 122451, ¶ 38. The trial court may then decide whether defendant is entitled to a new trial or if her conviction may be affirmed. See *id.*

¶ 22    For the reasons explained above, we reverse and remand for further proceedings consistent with this order.

¶ 23    Reversed and remanded.