# Illinois Official Reports

## Appellate Court

---

### *People v. Gillon*, 2016 IL App (4th) 140801

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNIE D. GILLON, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-14-0801 |
| Filed | December 8, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 13-CF-2096; the Hon. Heidi N. Ladd, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Bradley Jarka (argued), of State Appellate Defender's Office, of Chicago, for appellant.<br><br>David J. Robinson and John M. Zimmerman (argued), both of State's Attorneys Appellate Prosecutor's Office, of Springfield, of counsel, for the People. |
| Panel | JUSTICE APPLETON delivered the judgment of the court with opinion.<br>Presiding Justice Knecht and Justice Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1        In December 2013, defendant, Johnnie D. Gillon, pleaded guilty to felony aggravated assault (720 ILCS 5/12-2(b)(4)(i) (West 2012)) in exchange for the State's dismissal of two other pending charges. The trial court accepted defendant's plea and sentenced him to 30 months' probation. After defendant allegedly committed two criminal offenses while on probation, the State filed a petition to revoke defendant's probation.

¶ 2        Defendant's counsel raised a *bona fide* doubt as to defendant's fitness, and the trial court ordered defendant to be examined. Based on the opinion of a psychiatrist, the court found defendant unfit to stand trial and committed him to the Illinois Department of Human Services (Department). After the State and defense counsel stipulated defendant had been restored to fitness based upon the conclusions in the Department's report, the court found defendant fit to stand trial. The court revoked defendant's probation and sentenced him to five years in prison on the original offense.

¶ 3        Defendant appeals, arguing the trial court erred by (1) relying on the parties' stipulation he was fit to stand trial instead of making an independent judicial determination on that issue, (2) not *sua sponte* raising the fitness issue based upon defendant's conduct during subsequent court proceedings, and (3) failing to conduct a *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) into defendant's claim, raised at the sentencing hearing, of counsel's ineffective assistance.

¶ 4                                    I. BACKGROUND

¶ 5        In December 2013, the State charged defendant with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)) (count I), felony aggravated assault (720 ILCS 5/12-2(b)(4)(i) (West 2012)) (count II), and misdemeanor aggravated assault (720 ILCS 5/12-2(a) (West 2012)) (count III). Defendant pleaded guilty to count II and was sentenced to 30 months' probation. The State dismissed counts I and III as part of the plea agreement.

¶ 6        On March 7, 2014, the State filed a petition to revoke defendant's probation, alleging he committed criminal trespass and assault on February 28, 2014, in violation of the conditions of his probation. On March 19, 2014, defendant's appointed counsel filed a motion for the appointment of a psychiatrist, raising a *bona fide* doubt as to defendant's fitness to stand trial. The trial court granted counsel's request, appointing psychiatrist Dr. Albert Lo.

¶ 7        On April 21, 2014, Dr. Lo prepared a report based upon the fitness evaluation of defendant conducted on an unknown date. Dr. Lo noted defendant's history of paranoid schizophrenia and his need for medication. He said defendant was "able to discuss the differences between pleas of guilty and not guilty" and generally understood the legal system. However, Dr. Lo noted, as the interview progressed, defendant "became increasingly hostile, argumentative, and uncooperative." Dr. Lo believed, due to his behavior, defendant would have difficulty working with an attorney. In Dr. Lo's opinion, defendant was "currently able to understand the nature and purpose of the proceedings against him, but [was] unable to cooperate with an attorney and assist in providing a proper defense due to his mental illness." Thus, Dr. Lo found defendant was currently unfit to stand trial.

¶ 8        On May 5, 2014, at a fitness hearing, the trial court accepted Dr. Lo's evaluation and opinion, and without further evidence or argument from either side, it found defendant unfit to

plead or stand trial. The court ordered defendant placed in the custody of the Department for evaluation, placement, and treatment.

¶ 9 On May 22, 2014, the Department prepared a report (filed June 13, 2014, with the trial court), advising that, pursuant to its preplacement evaluation, conducted on May 16, 2014, by a licensed clinical social worker, defendant was fit to stand trial. According to the report, during the evaluation, defendant explained to the evaluator the circumstances pertaining to his latest criminal behavior with logic and clarity. He admitted that prior to his arrest, he had not taken his psychotropic medications. According to the evaluator, beginning March 1, 2014, since defendant had been in jail, he had been given his medication and "ha[d] shown improvements" in "mood stability and thought processes." When asked to explain the purpose of the interview, defendant said: "You have to see if I am fit. I am now." Based on this evaluation, the Department determined defendant was fit to stand trial.

¶ 10 On June 30, 2014, the trial court conducted a fitness hearing. The court accepted the parties' stipulation to the Department's report. Neither party produced further evidence, and both waived argument. The court accepted the report and found defendant was "now fit to stand trial." Defendant's counsel presented the court with an "order for restoration of fitness." The parties agreed to set the matter for a hearing on the State's petition to revoke.

¶ 11 On July 28, 2014, the trial court conducted a hearing on the State's petition to revoke defendant's probation. Elizabeth Porter, store manager of Little Caesars Pizza in Urbana, testified as the State's only witness. She said on February 28, 2014, defendant came into the store and began yelling that Porter owed him a pizza. She said he was cussing at customers. Porter told defendant she would give him a pizza if he waited outside. Defendant interrupted her testimony, saying, "She's lyin'." The court admonished defendant to not "say anything out loud." Porter continued her testimony. She said when she told defendant to wait outside, he cursed at her, at another employee, and at customers. Porter said she "got in between" defendant and the customers during the altercation. According to Porter, defendant threatened to hit her and kill her as they stood face-to-face just inches apart. At that point, the police arrived and escorted defendant outside.

¶ 12 Defendant testified a police officer had given him money for a pizza. He said a male employee refused to make him a pizza and came around the counter to where defendant was standing. The employee "started putting some gloves on his hands tightenin' them up." He told defendant to stop begging for food. He said Porter grabbed the employee by the shirt. He said Porter told him to go outside so the employee could beat him up. Defendant said he was afraid to go outside because the employee was "a real big heavyset guy" and was waiting for him. Porter told him to go outside or go to jail, and that is when the police walked in.

¶ 13 After considering the testimony, the trial court found the State had proved the allegations in the petition to revoke probation by a preponderance of the evidence. The court revoked defendant's probation. After the court announced its ruling, defendant yelled out in court: "I didn't do it, Judge. Why don't you believe? I didn't do nothin'. Please, ma'am. I didn't do nothin'. That lady just came here and lied and you all goin' to let her lie."

¶ 14 The trial court noted as follows:

"The record will reflect that [defendant] has become increasingly agitated as the court made its ruling. He then started yelling out disputing the court's ruling and he's become more and more agitated and—and screaming at this point. He could be heard through two locked doors as he was being removed. Because he was so out of control

and it's still apparent that he's escalating in his degree of being upset, we have had him removed from the courtroom."

¶ 15 At the resentencing hearing, the trial court considered the presentence investigation report, counsels' recommendations, and defendant's statement in allocution, wherein he told the court he did not remember the incident because he was "off [his] medication." The court advised defendant of his right to appeal. Defendant stated:

"One more thing. I wasn't involved with no plea bargains or nothing. I—I was thinking like, I—I was wondering why come [defendant's counsel] only called me one time out of nine months before—and—I didn't get no plea bargains, and I didn't get no—I—I—I would call it a—I'm trying to think of what you call it, innocent of counsel."

In response, the court told defendant it was proceeding to sentencing, as any potential offer by the State is "not something the court becomes involved in." The court explained its findings before pronouncing defendant's sentence. During the court's explanation, defendant interrupted several times to dispute the court's finding or express his promise to do better. Nevertheless, the court sentenced defendant to five years in prison. This appeal followed.

¶ 16                                              II. ANALYSIS

¶ 17 Defendant presents three arguments on appeal. First, defendant claims the trial court erred when it found him restored to fitness in a "truncated restoration hearing" consisting only of the conclusory opinion of the Department and the parties' stipulation thereto. Second, defendant claims the court erred when it failed to *sua sponte* reopen the issue of his fitness based upon his behavior at subsequent proceedings. And third, the court erred in failing to conduct a *Krankel* inquiry when defendant questioned his attorney's failure to adequately communicate with him. Because we agree with defendant's first two contentions of error, we need not address the third, as it is moot.

¶ 18 At the June 30, 2014, fitness hearing, the trial court was presented with (1) the Department's report finding defendant fit to stand trial and (2) a proposed order restoring defendant's fitness. Both sides stipulated to the Department's finding of fitness. Defendant contends the court erred by relying on the parties' stipulations instead of making an independent judicial determination. We agree. The court should have either questioned the Department's finding at the time of the stipulations, or, after accepting the stipulations, reopened the issue of defendant's fitness based upon his behavior in open court.

¶ 19 Initially, we note defendant acknowledges he failed to preserve this issue for our review. However, he claims, and we agree, the issue may be reviewed for plain error. See *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 28 (stating a defendant's fitness for trial involves a fundamental right and "alleged errors concerning fitness may be reviewed under the plain error doctrine"). See also *People v. Shaw*, 2015 IL App (4th) 140106, ¶ 23.

¶ 20 "The due process clause of the fourteenth amendment bars prosecution of a defendant unfit to stand trial." *People v. Holt*, 2014 IL 116989, ¶ 51. A defendant is unfit to stand trial if a mental or physical condition prevents him from understanding the nature and purpose of the proceedings against him or assisting in his defense. 725 ILCS 5/104-10 (West 2012). "[W]here a defendant was previously adjudicated to be unfit to stand trial, a presumption exists that the condition of unfitness remains until the defendant has been adjudicated to be fit at a valid

subsequent hearing." *Gipson*, 2015 IL App (1st) 122451, ¶ 29 (citing *People v. Greene*, 102 Ill. App. 3d 639, 641-42 (1981)).

¶ 21     "Normally, a trial court's decision that a defendant is fit to stand trial will not be reversed absent an abuse of discretion." *People v. Contorno*, 322 Ill. App. 3d 177, 179 (2001) (citing *People v. Newell*, 196 Ill. App. 3d 373, 377 (1990)). However, because the issue of fitness is constitutional in dimension, the record must affirmatively show that the court's fitness determination was the product of judicial discretion and judgment. *Gipson*, 2015 IL App (1st) 122451, ¶ 29; *People v. Cook*, 2014 IL App (2d) 130545, ¶ 13; *Contorno*, 322 Ill. App. 3d at 179; *Greene*, 102 Ill. App. 3d at 642. In other words, the court may not simply "rubber stamp" an expert's ultimate conclusion that a defendant has been restored to fitness. See *Contorno*, 322 Ill. App. 3d at 179 ("The ultimate decision as to a defendant's fitness must be made by the trial court, not the experts." (citing *People v. Bilyew*, 73 Ill. 2d 294, 302 (1978))); see also *Gipson*, 2015 IL App (1st) 122451, ¶ 29 ("[T]he court should be active, not passive, in assessing a defendant's fitness.").

¶ 22     Our supreme court stated "[i]f a defendant is insane and unable to answer for himself, he certainly is in no position to authorize his counsel to stipulate, nor is counsel warranted in stipulating, to his restoration [to fitness]." *People v. Reeves*, 412 Ill. 555, 560 (1952). This is not to say, however, that a trial court may never base its fitness determination upon a stipulation. As the First District recently noted, "[t]he distinction between proper and improper stipulations *** is a fine one." *Gipson*, 2015 IL App (1st) 122451, ¶ 30.

¶ 23     In *People v. Lewis*, 103 Ill. 2d 111 (1984), our supreme court discussed the distinction between proper and improper stipulations. That is, the court noted a difference between the parties stipulating to the fact of fitness and thereby accepting the expert's opinion and conclusion as true and correct (see *Reeves*, 412 Ill. at 560-61), versus stipulating to the *content* of the opinion testimony that would have been presented by the expert had the expert testified (see *Lewis*, 103 Ill. 2d at 116). In the latter circumstance, the court could find the defendant fit, seek more information, or find the evidence insufficient to support a finding of restoration to fitness. *Lewis*, 103 Ill. 2d at 116. With this latter and proper stipulation, the ultimate decision rests with the court, not the experts. *Lewis*, 103 Ill. 2d at 116.

¶ 24     The Second District discussed the distinction presented in *Lewis* as follows:

"Where a trial court fails to conduct an independent inquiry into a defendant's fitness but, instead, relies exclusively on the parties' stipulation to a psychological report finding the defendant fit, the defendant's due process rights are violated. [Citations.] However, where a trial court's finding of fitness is based not only on stipulations but also on its observations of the defendant and a review of a psychological report, the defendant's due process rights are not offended. [Citations.]" *Cook*, 2014 IL App (2d) 130545, ¶ 15.

¶ 25     It is apparent from the record before us the trial court relied solely on the parties' stipulations in finding defendant had been restored to fitness. The court stated it had indeed reviewed the Department's report, but there was no discussion as to the bases or opinions contained therein. The extent of the fitness hearing was as follows:

"THE COURT: *** [T]his is a fitness determination then.

MS. JESSUP [Defense Attorney]: Yes, [Y]our Honor.

THE COURT: There was a report that was filed. The last one that I have is June 13th of 2014. Do you have that report then, Mr. Banach [(assistant State's Attorney)]?

MR. BANACH: Your Honor, may I have a moment?

THE COURT: You may. And if you do not have it, we'll make you a copy. It was filed June 13th, dated May 22nd.

MR. BANACH: Yes, [Y]our Honor, I have the report dated May 22nd.

THE COURT: You have that as well, Ms. Jessup?

MS. JESSUP: Yes, Your Honor.

THE COURT: All right. Then I'll call that for hearing. Mr. Banach.

MR. BANACH: Your Honor, the State would stipulate to the report from [the Department] dated May 22nd.

THE COURT: And Ms. Jessup, is that agreeable?

MS. JESSUP: Yes, Your Honor.

THE COURT: All right. We'll show then that the court has considered that report. It was authored on May 22nd, 2014, from the Department of Human Services. Did the State wish further evidence then, Mr. Banach?

MR. BANACH: No, thank you, Your Honor.

THE COURT: Is there any evidence on behalf of the defendant then, Ms. Jessup?

MS. JESSUP: No, Your Honor.

THE COURT: Did you wish argument then, Mr. Banach?

MR. BANACH: No, thank you.

THE COURT: Ms. Jessup, any argument on behalf of the defendant?

MS. JESSUP: No, thank you, Your Honor.

THE COURT: I have considered that report. It is the determination of the professionals working with [defendant] that he's now fit to stand trial, so I do find that he's able to assist in his own defense, understands the nature and purpose of the proceedings, and fit to proceed to trial or plead, able to help his attorney as well. In that regard then, did you want to set it for further proceeding then, Ms. Jessup?"

¶ 26 Due to the important constitutional ramifications involved in a restoration hearing, we find the trial court should have given close consideration to the circumstances of this particular case. We do not go so far as to find the court should never accept a stipulation at a restoration hearing. However, in this case, certain circumstances existed which gave rise to pivotal concerns questioning defendant's fitness.

¶ 27 First, in general, there should be a high level of judicial scrutiny in a restoration hearing. The constitutional ramifications and liberty interests at stake justify careful consideration of the expert's opinion. Extra precautions may be needed to ensure the bases and grounds set forth in the expert's report are justified and satisfactory to the court's determination. A potential error in the Department's restoration finding may subject an otherwise unfit person to a trial and sentencing. Because the due process clause forbids conviction of a defendant who is unfit to stand trial (*People v. McCallister*, 193 Ill. 2d 63, 110 (2000)), the court should take great care to ensure to its satisfaction the defendant's fitness has been restored. That is, the court should take steps to ensure the defendant is indeed able to understand the nature of the proceedings and to assist in his own defense. *Cook*, 2014 IL App (2d) 130545, ¶ 12.

- 6 -

¶ 28    Second, the Department's preplacement evaluation determining defendant was restored to fitness was conducted less than two weeks after the trial court had declared defendant unfit to stand trial based upon Dr. Lo's psychiatric examination. According to the Department's report, defendant was evaluated May 16, 2014 (the report was dated May 22, 2014, and filed with the court on June 13, 2014). To justify this seemingly quick turn of events, the court should have, on the record, questioned the parties as to how or why defendant had gained fitness in a matter of days.

¶ 29    Third, the Department's report was submitted by the "evaluator," Kimberly A. Swenka, a licensed clinical social worker, rather than a psychiatrist or a psychologist. It appears Swenka indeed conducted the evaluation herself and determined respondent was currently fit to stand trial. The applicable statutory section provides as follows:

> "If upon the completion of the placement process[,] the Department of Human Services determines that the defendant is currently fit to stand trial, it shall immediately notify the court and shall submit a written report within 7 days. In that circumstance[,] the placement shall be held pending a court hearing on the Department's report." 725 ILCS 5/104-17(b) (West 2012).

We acknowledge this statutory section does not specifically require the fitness decision be made by a psychiatrist or a psychologist. However, we note the legislature specifically required the initial fitness examination to be performed by "one or more licensed physicians, clinical psychologists, or psychiatrists chosen by the court." 725 ILCS 5/104-13(a) (West 2012). Although the statute does not specifically prohibit a licensed clinical social worker from conducting the Department's pretreatment evaluation, we find, in this particular case, the social worker's decision restoring defendant to fitness required the court to perhaps perform a more thorough analysis than otherwise necessary if presented with an opinion from a psychiatrist or psychologist.

¶ 30    Finally, defendant's behavior in proceedings conducted after he had been restored to fitness should have put the parties and the court on notice as to whether the Department's opinion was correct. His later behavior seemed to raise a *bona fide* doubt again as to his fitness. It is plausible defendant appeared fit during the Department's preplacement evaluation, when his environment was calm and controlled. However, when he later appeared in court and was subjected to the confrontational environment of a hearing, in the presence of witnesses, attorneys, and a judge, his mental faculties changed. His paranoid behavior surfaced, as he was seemingly unable to control his outbursts and agitation. In fact, the trial court had him removed from the courtroom because "he was so out of control and it's still apparent that he's escalating in his degree of being upset." Defendant's behavior during these court proceedings was more akin to the behavior observed by Dr. Lo during his psychiatric evaluation.

¶ 31    Given the above considerations and the cumulative effect of each upon the other, we hold the trial court erred in accepting the parties' stipulations that defendant had been restored to fitness. In so holding, we are mindful of what our supreme court cautioned some 60 years ago:

> "Albeit, in order to avoid the repetition of situations similar to the case at bar[,] the courts should exercise care to see that restoration proceedings be determined as directed by statute; that the issue submitted as one of fact be determined by the jury; and that directed verdicts be sparingly used only where the evidence properly warrants that action. They should not exercise the prerogative of directing a verdict solely upon

the unsupported stipulation, agreement, or plea, alone, made by the accused or by his counsel." *Reeves*, 412 Ill. at 561.

See also *People v. Johnson*, 15 Ill. App. 3d 680, 686 (1973).

¶ 32                                    III. CONCLUSION

¶ 33        Based on the above, we reverse the trial court's order revoking defendant's probation. The cause is remanded for a restoration hearing consistent with this opinion and such other proceedings as may be appropriate. Likewise, the order of June 30, 2014, restoring defendant's fitness is set aside.

¶ 34        Reversed and remanded.