NOTICE

Decision filed 06/07/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220608-U

NO. 5-22-0608

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 17-CF-698 |
| | ) | |
| GREGORY A. JOHNSON JR., | ) | Honorable |
| | ) | Derek J. Girton, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Presiding Justice Vaughan and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We vacate the trial court's order and remand this cause with directions that the trial court conduct a retrospective fitness hearing to determine whether the defendant was restored to fitness prior to entering his guilty plea.

¶ 2    The defendant, Gregory A. Johnson Jr., appeals the trial court's denial on remand of his motion to withdraw his guilty plea. The defendant was initially found unfit to stand trial. After he was discharged by the mental health center, a fitness hearing was held wherein the trial court found him restored to fitness. Thereafter, the defendant pled guilty to one count of first degree murder and was sentenced to 45 years in prison. The trial court denied the defendant's motion to withdraw his guilty plea as untimely, and the defendant appealed. The Fourth District reversed the trial court's judgment in a summary order. *People v. Johnson*, No. 4-19-0412 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)). On remand, the trial court again denied

1

the defendant's motion to withdraw his guilty plea; this time on the merits. The defendant appeals, asserting the trial court erred in finding him restored to fitness before accepting his guilty plea where the trial court adopted the conclusions of the defendant's treatment providers based on a stipulation by the parties to the contents of a report that the trial court never received. The defendant also asserts that, assuming he was properly restored to fitness, the trial court erroneously denied him the right to represent himself during postplea proceedings. For the following reasons, we vacate and remand.

¶ 3                                    I. Background

¶ 4      The defendant was charged with multiple offenses in two separate cases. In case number 17-CF-697, the defendant was charged with criminal damage to government supported property and criminal trespass to a residence. On October 20, 2017, the defendant was charged in case number 17-CF-698 with three counts of first degree murder in the death of Timothy Ellis in violation of the Criminal Code of 2012 (720 ILCS 5/9-1 (West 2016)).

¶ 5      On December 21, 2017, the defendant's appointed counsel filed a motion requesting the trial court to order a fitness evaluation, stating that he believed there was a *bona fide* doubt as to defendant's fitness to stand trial or aid in his defense based on his own observations of the defendant's demeanor and comments, and based on the defendant's belief that he had mental health issues of an "unknown nature." On January 5, 2018, defense counsel's request that Dr. David Coleman be ordered to conduct a fitness evaluation was granted by the trial court.

¶ 6      On March 29, 2018, a hearing was held on the defendant's fitness. In the hearing, the trial court noted that Dr. Coleman's report was not in the file. The following colloquy occurred:

   "THE COURT: Somebody needs to tell Dr. Coleman that he needs to get copies of

   these reports to the clerk to get in the court file, because they are not getting in there.

2

DEFENSE COUNSEL: I will certainly do that, Your Honor. I apologize.

THE COURT: It's not your fault, but this is the third one today. And are you stipulating to the contents of the report?

DEFENSE COUNSEL: Your Honor, I am. There is one correction on the first page, Dr. Coleman indicates that it was referred for a fitness evaluation in November of 2014. I believe that's just a misprint. The referral happened in January of this year, but otherwise, I would be stipulating to the contents.

THE COURT: Mr. Alikhan? [for the State]

THE STATE: Judge, we'll stipulate to the opinions made by Dr. Coleman in the report.

THE COURT: And do we have an order?

DEFENSE COUNSEL: I do, and [the State] reviewed it and signed it as well, Your Honor.

THE COURT: Based on the stipulation of the parties and the contents of the report, the order on fitness will enter this date. I'm going to set this for a status on—I did the last one on May 29th. Is that too far out or is that okay?

DEFENSE COUNSEL: That should be fine, Your Honor."

¶ 7 Dr. Coleman's report concluding that the defendant was unfit to stand trial is not included in the record on appeal. The record does, however, include an Illinois Department of Human Services treatment plan dated May 21, 2018. In the treatment plan, Dr. N. Vallabhaneni indicated that the defendant was found unfit to stand trial on March 28, 2018. Dr. Vallabhaneni also indicated that the defendant reported he had many past psychiatric hospitalizations and had been prescribed medications in the past, including lithium, Risperdal, Haldol, Zoloft, trazadone, and Ritalin.

3

Although the report listed the defendant's "current medications" as olanzapine for psychosis and lorazepam for anxiety, there was no indication in the report as to when these medications were prescribed. The defendant's primary diagnosis was listed as paranoid schizophrenia with a secondary diagnosis of antisocial personality disorder. In the report, under the heading "The Issue of Fitness," Dr. Vallabhaneni included a quotation attributed to Dr. Coleman on February 13, 2018:

> "[The defendant] presented with an animated and irritable affect. He made constant rants about the Public Defender being in collusion with the State's Attorney, and frequent allusions to his trial needing to be by God and Jesus. His verbal IQ appeared to be in the borderline to low-average range, but his insight, judgment, and impulse control appeared to be limited. He does not appear to presently meet criteria for fitness, but he should be able to be made fit within one year."

¶ 8    On November 14, 2018, a status hearing was held on the defendant's fitness. The following colloquy occurred:

> "DEFENSE COUNSEL: Your Honor, [the defendant] has been returned from Chester Mental Health Center. There is a report that I know the State has received. I don't know if the Court has received the—
>
> THE COURT: A discharge—notice of change in status filed November 5th.
>
> DEFENSE COUNSEL: I have—
>
> THE COURT: I got that. Let me see what else is in the file.
>
> DEFENSE COUNSEL: A report dated 10-25-18, a 90-day fitness evaluation progress report. I would be happy to let the Court—
>
> THE COURT: Hang on. Let me just double check. There's not one in the Court file.

4

DEFENSE COUNSEL: I believe at this point it's the intention of both parties to stipulate that if the doctor who wrote the report were to testify, he would testify consistently with his report.

THE COURT: Which is restoring him to fitness?

DEFENSE COUNSEL: To fitness, yes, Your Honor.

THE COURT: [State], are you in agreement?

THE STATE: Yes, Your Honor.

THE COURT: Okay. The Court will accept the stipulation of the parties as to the contents of the report that if the doctor were testifying, that is what he would testify to, and [the defendant] will be restored to fitness based on that."

¶ 9    The notice of change in status, filed on November 5, 2018, is a one-page form signed by the facility director of the mental health center indicating that on November 1, 2018, the defendant was discharged to the Vermilion County Sheriff and that the defendant had not been adjudged incompetent at the time he was ordered hospitalized. The document indicated that the defendant was now fit to stand trial with no other information.

¶ 10    On March 11, 2019, the parties reported to the court that they had reached a fully negotiated plea agreement wherein the defendant would plead guilty to one count of first degree murder with intent to kill for which he would serve 45 years in the Illinois Department of Corrections, followed by 3 years of mandatory supervised release. In exchange for his guilty plea, the State would dismiss the two remaining counts of first degree murder along with the charges in case number 17-CF-697. The State provided a factual basis. After fully admonishing the defendant, the trial court accepted his guilty plea and sentenced the defendant pursuant to the plea agreement.

¶ 11    On April 14, 2019, the defendant filed a petition to withdraw his guilty plea and vacate his sentence, alleging that (1) he was not adequately represented by plea counsel and (2) he was "a mental health patient and was under great mental and emotional stress and not being medicated properly for my severe anxiety, I took the plea." On April 17, 2019, the trial court denied the defendant's motion to withdraw his plea, finding that it was untimely filed. On May 24, 2019, the trial court denied the defendant's motion to reconsider. The defendant appealed, arguing that he had timely submitted his motion to withdraw his guilty plea when he placed it in the prison mail system on April 9, 2019. The Fourth District reversed the trial court's denial of the defendant's motion to reconsider and remanded for consideration of his motion to withdraw his guilty plea and vacate the sentence on the merits.

¶ 12    On remand, the defendant, by counsel, filed an amended motion to withdraw his guilty plea and vacate judgment, which the trial court again denied. On September 14, 2022, the defendant filed a *pro se* notice of appeal. On September 16, 2022, the Office of the State Appellate Defender was appointed to represent the defendant in his appeal.

¶ 13                                II. Analysis

¶ 14    On appeal, the defendant contends that the trial court erred in finding him restored to fitness where the trial court adopted the conclusions of the defendant's treatment providers based on a stipulation by the parties to the contents of a report that the trial court never received. The defendant also contends that, assuming he was properly restored to fitness, the trial court erroneously denied him the right to represent himself during postplea proceedings.

¶ 15    After the appeal was fully briefed, the defendant filed a motion to cite as additional authority an unpublished case, *People v. DeHaven*, 2023 IL App (4th) 220840-U, issued three weeks after the defendant filed his reply brief (cited as persuasive authority under Illinois Supreme

6

Court Rule 23(e) (eff. Jan. 1, 2021)). In *DeHaven*, the Fourth District vacated the trial court's order restoring the defendant to fitness and remanded for a retrospective fitness hearing where the record did not affirmatively establish that the trial court exercised judicial discretion in making an independent finding defendant had been restored to fitness. *Id.* ¶ 32. The defendant submits that *DeHaven* reaffirms the continuing vitality of decisions like *People v. Cook*, 2014 IL App (2d) 130545 (trial court's determination of fitness may not be based solely on a stipulation to the existence of psychiatric conclusions or findings) and *People v. Gillon*, 2016 IL App (4th) 140801 (trial court may not simply rubber stamp an expert's ultimate conclusion that defendant has been restored to fitness), which impose greater obligations on a trial court than simply acceding to the parties' agreement that a defendant has been restored to fitness. On April 1, 2024, we ordered the defendant's motion taken with the case. We now deny the motion, finding that the vitality of the decisions cited by the defendant are not at issue and, thus, *DeHaven* is unnecessary to the resolution of this appeal.

¶ 16    The State submits that because the defendant failed to raise the issue in a posttrial motion, he has forfeited it for purposes of appeal. As a determination of fitness involves a fundamental right, alleged errors concerning fitness may be reviewed under the plain error doctrine. *People v. Gipson*, 2015 IL App (1st) 122451, ¶¶ 27-28. "The first step in plain error review is to determine whether a clear or obvious error occurred." *People v. Finlaw*, 2023 IL App (4th) 220797, ¶ 47. "The second prong of plain error review is equivalent to reviewing for structural error, requiring automatic reversal where the error serves to erode the integrity of the judicial process and undermine the fairness of a defendant's trial." *Id.*

¶ 17    A defendant is presumed to be fit to stand trial, or to plead guilty, and be sentenced. 725 ILCS 5/104-10 (West 2016). A defendant is unfit where he is unable to understand the nature and

7

the purpose of the proceedings against him or to assist in his defense. *Id.* The issue of the defendant's fitness may be raised at any time by the defense, the State, or the circuit court. *Id.* § 104-11(a). Once a *bona fide* doubt as to the defendant's fitness is raised, the circuit court shall order a determination of the issue before proceeding further. *Id.*

¶ 18 Fitness speaks only to a defendant's ability to function within the context of a trial; a defendant may be fit to stand trial or plead guilty even though his mind is otherwise unsound. *Finlaw*, 2023 IL App (4th) 220797, ¶ 50 (citing *People v. Haynes*, 174 Ill. 2d 204, 226 (1996)). Thus, "having a mental illness does not on its own render an individual unfit to stand trial." *Id.* The determination of a defendant's fitness must be made by the trial court, not the experts. *Id.* A trial court's determination that a defendant is fit may not be based solely upon a stipulation to the existence of psychiatric conclusions or findings. *People v. Shaw*, 2015 IL App (4th) 140106, ¶ 26. Where a trial court's determination of fitness is based on not only stipulations of the parties, but on the trial court's review of a psychological report and the court's own observations of the defendant, due process is generally satisfied. *Id.*

¶ 19 "A prior adjudication of unfitness raises the presumption that a defendant remains unfit and the presumption continues until there has been a valid hearing finding him fit." *People v. Thompson*, 158 Ill. App. 3d 860, 865 (1987). The constitutional ramifications and liberty interests at stake in a restoration hearing justify a trial court's careful consideration of the expert's opinion. *Gillon*, 2016 IL App (4th) 140801, ¶ 27. In determining whether a defendant's fitness has been restored, the trial court should ensure that the defendant is able to understand the nature of the proceedings and to assist in his own defense. *Id.*

¶ 20 "The Illinois Supreme Court has stated plainly that '[t]he trial court's ruling on the issue of fitness will be reversed only if it is against the manifest weight of the evidence.' " *Finlaw*, 2023

8

IL App (4th) 220797, ¶ 53 (quoting *Haynes*, 174 Ill. 2d at 226). Generally, a trial court's decision regarding fitness is not a matter of discretion; rather, "it is a matter of *evidence*." (Emphasis in original.) *Id.* ¶ 55. However, "where a trial court merely 'rubber stamp[s]' an expert's conclusion and fails to exercise judicial discretion and judgment, it may reflect an abuse of discretion." *Id.* ¶ 57 (quoting *Gillon*, 2016 IL App (4th) 140801, ¶ 21).

¶ 21   In the instant matter, it is unclear whether the trial court ever saw the expert's report concluding that the defendant had been restored to fitness. The record reveals that the expert's report was not in the court's file, and it is unclear whether the trial court was provided with a copy of that report at the hearing. Instead, it appears that the trial court merely relied on the stipulation of the parties that the defendant had been restored to fitness and, thus, failed to exercise its judicial discretion. Because the record does not demonstrate that the trial court ensured that the defendant was able to understand the nature of the proceedings or to assist in his own defense before determining he had been restored to fitness, we find that plain error has been established.

¶ 22   Accordingly, we conclude that the appropriate remedy is for this court to vacate the trial court's order and remand this cause to the trial court for the limited purpose of conducting a retrospective fitness hearing to determine whether the defendant was fit to plead guilty. See, *e.g.*, *People v. Payne*, 2018 IL App (3d) 160105, ¶ 14 (although once disfavored, retrospective fitness hearings now are appropriate if the court believes that defendant's fitness can be fairly and accurately determined on remand). Following the retrospective fitness hearing, if the trial court concludes that the defendant's fitness at the time of his guilty plea can be accurately assessed and confirmed, then pursuant to our reasoning in *People v. Moore*, 408 Ill. App. 3d 706, 713 (2011), we retain jurisdiction, pursuant to Illinois Supreme Court Rule 615(b)(2) (eff. Jan. 1, 1967), to consider the merits of the defendant's claim that he was deprived of his right to represent himself

9

during postplea proceedings, which we have declined to consider until the retrospective fitness proceedings occur. Also pursuant to *Moore* (see *id.*), we direct the trial court to deliver to the clerk of the Appellate Court a report of its findings and a record of the proceedings on remand.

¶ 23    If, on the other hand, the trial court on remand concludes that the evidence regarding the defendant's fitness at the time of his guilty plea is inconclusive or suggests that the defendant was not fit at the time of his plea hearing, then the defendant is entitled to a new trial. See *Gipson*, 2015 IL App (1st) 122451, ¶ 38.

¶ 24                                III. Conclusion

¶ 25    For the foregoing reasons, we vacate the trial court's order and remand this cause with directions that the trial court conduct a retrospective fitness hearing to determine whether the defendant was restored to fitness prior to his guilty plea.

¶ 26    Order vacated; cause remanded with directions.